UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
EVANGELIA KALOUDIS,                   :

                      Plaintiff,             :
                                             : **MEMORANDUM DECISION AND**
              -against-               : **ORDER**

UNITED STATES OF AMERICA,       :   23-cv-8970 (BMC)

                     Defendant.         :
----------------------------------------------------------- X

**COGAN**, District Judge.

     Plaintiff brings this personal injury suit against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346. Defendant moves to dismiss for lack of subject matter jurisdiction based on sovereign immunity. Because the discretionary function exception to the FTCA confers sovereign immunity over the conduct plaintiff challenges, defendant's motion is granted.

## BACKGROUND

     Plaintiff alleges that she was injured while walking to her vehicle in the overflow parking lot of the Aviator Sports & Events Center. The Aviator Center, and its overflow parking lot, are located in the Gateway National Recreation Area national park in Brooklyn, New York, which is owned and operated by the National Park Service. While walking to her car at night, plaintiff tripped on a curb that was elevated more than four inches above the adjoining sidewalk.

     About three years before plaintiff's fall, the National Park Service carried out repairs and renovations on the relevant parking lot. As part of this project, the National Park Service installed a ramp parallel with the curb on which plaintiff tripped. The ramp made the sidewalk slope gradually into the crosswalk, but it also made the sidewalk lower than the curb by several

inches. Before this installation, the curb had been level with the sidewalk. Below is a photograph of the curb and curb ramp as they existed at the time plaintiff tripped over the curb:



Plaintiff alleges that the National Park Service acted negligently by installing a sloped sidewalk without altering the existing curb to be level or flush with the sidewalk; failing to warn of the level change; and using "inadequate, insufficient and poor lighting in the subject area where the accident occurred."

## LEGAL STANDARD

### I.  Rule 12(b)(1) Motion to Dismiss

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). When considering a motion to dismiss pursuant to Rule 12(b)(1), courts must "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001) (citation omitted). Accepting these material facts as true and drawing these reasonable inferences, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it

exists." Makarova, 201 F.3d at 113 (citation omitted). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." Id. (citation omitted).

## II.    Discretionary Function Exception to the FTCA

Unless the United States unequivocally waives its right to sovereign immunity in a statute, it is immune from suit. Cangemi v. United States, 13 F.4th 115, 129 (2d Cir. 2021) (quoting County of Suffolk v. Sebelius, 605 F.3d 135, 140 (2d Cir. 2010)). "The FTCA provides for a limited waiver of sovereign immunity for 'injury or loss of property . . . caused by the negligent or wrongful act or omission' of a federal government employee 'acting within the scope of his office or employment.'" Id. at 129-30 (quoting 28 U.S.C. § 1346(b)(1)). "[W]aivers of sovereign immunity are 'to be strictly construed, in terms of [their] scope, in favor of the sovereign.'" Cooke v. United States, 918 F.3d 77, 81 (2d Cir. 2019) (quoting Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).

The waiver of sovereign immunity provided by the FTCA is limited by several exceptions, including the discretionary function exception. This exception bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Thus, when an action is a "discretionary function," "the United States has not waived its sovereign immunity, and federal courts lack subject matter jurisdiction over claims premised on those acts." Cangemi, 13 F.4th at 130.

Whether an action is a discretionary function such that the exception applies is based on a two-prong test. The first prong addresses whether "the acts alleged to be negligent or wrongful are discretionary, in that they involve an element of judgment or choice and are not compelled by

3

statute or regulation," and the second prong asks whether "the judgment or choice in question is grounded in considerations of public policy or susceptible to policy analysis." Id. (quoting Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000)) (cleaned up). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324 (1991).

A plaintiff's claim can survive a motion to dismiss based on the discretionary function exception if the action at issue was "inconsistent with a specific mandatory directive – *i.e.*, a federal statute, regulation, or policy that specifically prescribes a course of action for the federal government to follow," or if it was "not grounded in considerations of public policy or susceptible to policy analysis." Cangemi, 13 F.4th at 130 (quotations omitted) (cleaned up).

## DISCUSSION

### I.     Existence of Specific Mandatory Directive

Under the first prong of the discretionary function exception test, this Court considers whether a "federal statute, regulation, or policy specifically prescribes a course of action" related to the conduct plaintiff challenges in her lawsuit. See Gaubert, 499 U.S. at 322 (quotations omitted) (cleaned up). Plaintiff asserts that the Architectural Barriers Act ("ABA"), 42 U.S.C. § 4151, is such a statute that prescribes the course of action the National Park Service should have adhered to in renovating the overflow parking lot, including the curb that caused her injury.

Pursuant to the ABA, the General Services Administration sets standards for compliance with the statute. 42 U.S.C. § 4152. These standards are referred to as the ABA Accessibility Standards and are codified in the Code of Federal Regulations. See 41 C.F.R. § 102-76.65; 36

4

C.F.R. § 1191, Appendices C and D.  The United States Access Board, an independent federal agency, in turn develops guidelines for compliance with the ABA Accessibility Standards, called the Guide to the ABA Accessibility Standards.  See United States Access Board Guide to the ABA Accessibility Standards, About the ABA Guide, https://www.access-board.gov/aba/guides/ (last visited March 24, 2025) (hereinafter "Guide").

Plaintiff asserts that the National Park Service has violated the ABA and its accompanying regulations and guidelines by (1) installing a parallel curb ramp instead of a curb ramp with side flares, and (2) creating a change in vertical level between the ramp and the curb exceeding one-half inch.

### A.   Use of Parallel Curb Ramp

According to plaintiff, the ABA provides that parallel curb ramps (such as the one abutting the curb over which plaintiff tripped) are only permitted when there is insufficient landing space to use a curb ramp with side flares.  Because there was sufficient landing space on the sidewalk abutting the curb on which plaintiff tripped, she argues that the National Park Service was required to install a curb ramp with side flares.

The ABA Accessibility Standards state that, "[w]here provided, curb ramp flares shall not be steeper than 1:10."  36 C.F.R. § 1191, Appendix D § 406.3.  Additionally, "[l]andings shall be provided at the tops of curb ramps.  The landing clear length shall be 36 inches (915 mm) minimum.  The landing clear width shall be at least as wide as the curb ramp, excluding flared sides, leading to the landing."  Id. § 406.4.  There is an exception to this landing requirement, which states that "[i]n alterations, where there is no landing at the top of curb ramps, curb ramp flares shall be provided and shall not be steeper than 1:12."  Id.  The ABA Accessibility Standards do not discuss the use of parallel curb ramps.

5

The Guide to the ABA Accessibility Standards explains that parallel curb ramps are one alternative that can be used when there is no landing at the top of a curb ramp. See Guide ch. 4 Ramps and Curb Ramps: Curb Ramps §§ 406.4, 406.3 (a parallel curb ramp design "provides an option where limited space precludes a top landing."). The Guide also includes in its Common Questions section the question of whether side flares are required at curb ramps, and answers that

> [t]he ABA Standards do not require that curb ramps have side flares, but limit the slope (1:10 max.) where they are provided. Side flares are advisable where pedestrian traffic may cross runs to prevent tripping hazards. Side flares are essential in alterations when space for a top landing (36" deep min.) is not available; in this instance, side flares (1:12 max. slope) are necessary to accommodate wheelchair maneuvering that will partially occur at flares in the absence of full landing space at the top unless a parallel-type curb ramp is provided.

Guide ch. 4 Common Questions.

The Guide thus establishes that curb ramps with side flares – the design that plaintiff asserts "the ABA required" – are actually only necessary when "space for a top landing (36" deep min.) is not available." Plaintiff herself asserts is not the situation here, and in which case they are only required "*unless* a parallel-type curb ramp is provided." Id. (emphasis added). In other words, the ABA does not require the use of curb ramps with side flares instead of parallel curb ramps. And although the Guide contemplates parallel curb ramps as feasible alternatives to curbs with side ramps when there is not sufficient space for a top landing, it does not limit the use of parallel curb ramps to these situations. Plaintiff's interpretation that parallel curb ramps are "permitted only when the[re] is insufficient landing space" finds no support in the ABA, its Accessibility Standards, or the Guide to the ABA Accessibility Standards. Accordingly, the ABA policies concerning curb ramps do not "specifically prescribe[ ]" the type of curb ramp the National Park Service should have installed. Gaubert, 499 U.S. at 322.

6

## B. Change in Vertical Level Over One-Half Inch

Plaintiff also identifies regulations that she says prescribe the National Park Service's conduct by pointing to the ABA Accessibility Standards that limit changes in vertical levels on ground surfaces to less than one-half inch. See 6 C.F.R. § 1191, Appendix D §§ 303.1-4. The Guide to the ABA Accessibility Standards clarifies, however, that this one-half inch limit only applies to "interior and exterior accessible routes, including walking surfaces, ramps, elevators, and lifts[;] stairways that are part of a means of egress[;] required clearances, including clear floor space, wheelchair seating spaces, turning space, and door maneuvering clearances[; and] accessible parking spaces, access aisles, and accessible loading zones." Guide ch. 3 Floor and Ground Surfaces.

The curb on which plaintiff tripped was not a walking surface, ramp, elevator, or lift, a stairway, a required clearance, or an accessible parking space, aisle, or passenger loading zone. Nor was the curb part of an "accessible route," which the ABA Accessibility Standards define as "consist[ing] of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts." 6 C.F.R. § 1191, Appendix D § 402.2. The ABA Accessibility Standards require that accessible routes "connect" certain spaces, including "site arrival point[s]," "accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site," and "each story and mezzanine in multi-story buildings and facilities." 6 C.F.R. § 1191, Appendix C §§ F206.2.1-3. Curbs, unlike walking surfaces, ramps, elevators, and the other components of accessible routes, do not "connect" spaces to each other and are not properly conceived of as part of a "route," let alone an accessible one. Cf. Hadley v. City of New York, No. 15-cv-8231, 2017 WL 6729290, at *2 (S.D.N.Y. Oct. 4, 2017) (plaintiff was outside the

7

accessible route, as defined in 6 C.F.R. § 1191, Appendix D § 402.2, when she stepped off "the portion of the curb that [was] elevated from the street" and into a hole).

Because the curb on which plaintiff tripped was not part of an accessible route, the ABA Accessibility Standards that limit changes in vertical levels on ground surfaces to less than one-half inch do not prescribe the National Park Service's actions in changing the level between the curb and the sidewalk.

### C.     Other Applicable Government Policies

In addition to the ABA, the National Park Service's conduct is also regulated by the National Park Service Management Policies, which were promulgated pursuant to the National Park Service's enabling statute, 54 U.S.C. § 100101(a) (formerly codified as 16 U.S.C. § 1).

The National Park Service Management Policies provide that "[t]he means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing." National Park Service Management Policies § 8.2.5.1.  The policies list specific examples of decisions that are discretionary, including "decisions about whether to install warning signs or artificial lighting."  Id.  "Far from issuing specific directives, then, 'Section 8.2.5.1 grants considerable discretion to NPS officials to determine the best way to utilize park resources to ensure public safety.'"  Kehoe v. United States, 24-cv-806, at *7 (E.D.N.Y. March 20, 2025) (quoting Brown v. United States, 661 F. Supp. 2d 341, 362 (E.D.N.Y. 2009)); see also Stepanian v. United States, No. 15-cv-3727, 2017 WL 105909, at *4 (E.D.N.Y. Jan. 10, 2017) (same). Discretion is explicitly provided for decisions about providing warnings and lighting, two of the grounds on which plaintiff challenges the National Park Service's conduct as negligent.

The National Park Service Management Policies also provide that "[a]ll trails and walks will be carefully situated, designed, and managed to reduce conflicts with automobiles and

8

incompatible uses; allow for a satisfying park experience; allow accessibility by the greatest number of people; and protect park resources." National Park Service Management Policies § 9.2.2. Further, parking lots "will be designed to harmoniously accommodate motor vehicles and other appropriate users." Id. § 9.2.4. In "set[ting] forth . . . general statement[s] of policy goals rather than dictating specific measures," Brotman v. United States, 111 F. Supp. 2d 418, 424 (S.D.N.Y. 2000), the Management Policies clearly conceive of the National Park Service's remaining challenged conduct (designing a walkway in a parking lot to include a curb that is not level or flush with the sidewalk) as discretionary.

## II. Implication of Policy Judgment

Because the National Park Service Management Policies "allow[ ] a Government agent to exercise discretion" in taking the actions at issue here, this Court will "presume[ ] that [the National Park Service's] acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324.

Michael Pisano, the project manager who oversaw the resurfacing of the overflow parking lot, identified several policy considerations that went into the decision to install a parallel curb ramp that would result in a several-inch vertical change between the sidewalk and the curb, including: maintaining a barrier between vehicles in the parking lot and pedestrians on the sidewalk, preventing rainwater and snow melt from running onto the sidewalk, preventing visually impaired individuals from unknowingly walking into the parking area, and preserving funds. Even drawing "all reasonable inferences in the plaintiff's favor," Merritt, 245 F.3d at 186, these identified policy considerations show that the National Park Service's conduct was, at least, "susceptible to policy analysis." Gaubert, 499 U.S. at 325 (footnote omitted).

9

The only proffered policy consideration that plaintiff challenges is that of preventing visually impaired individuals from unknowingly walking into the parking area. Plaintiff explains that because the curb is adjacent to only two parking spaces, and the rest of the row of parking spaces is not blocked by a raised curb, this policy consideration is "at best, limited and, at worst, revisionist." Plaintiff's criticism omits the fact that, in addition to two parking spaces, the raised curb is also adjacent to the crosswalk leading to that row of cars, where people would be most likely to cross the street and, potentially, cross unknowingly into the parking lot. But even adopting, *arguendo*, plaintiff's position that this policy consideration is inapplicable, the other policy issues Pisano identified remain sufficient to show that the National Park Service's conduct was susceptible to policy analysis.

Plaintiff also argues that property maintenance does not involve a policy decision that the discretionary function exception is meant to protect, so the National Park Service's acts concerning "sidewalk maintenance" are not entitled to sovereign immunity. As plaintiff acknowledges, it is the minority view in this Circuit that decisions about property maintenance are outside the ambit of the discretionary function exception. The Second Circuit has affirmed that the decision not to conduct repairs because of, *inter alia*, the cost of such repairs, the relevant agency's allocation of resources, and the seriousness of the condition allegedly requiring repairs, is "susceptible to a policy analysis" such that the discretionary function exception applies. Reichhart v. United States, 408 F. App'x 441, 443 (2d Cir. 2011) (summary order) (citing Coulthurst, 214 F.3d at 109). Because such considerations were at issue here, this Court concludes that the National Park Service's conduct was "grounded in considerations of public policy or susceptible to policy analysis." Cangemi, 13 F.4th at 130 (quoting Coulthurst, 214 F.3d at 109).

Even considering the minority view that property maintenance decisions are not subject to the discretionary function exception, the challenged conduct here did not consist of "routine, 'mundane' maintenance," such as fixing holes in recreation fields, Maghen v. United States, No. 19-cv-6464, 2021 WL 4172060 (E.D.N.Y. Sept. 14, 2021), or fixing broken or eroded log retainer bars along a trail, see Cohen v. United States, No. 98-cv-2604, 2004 WL 502924, at *7 (E.D.N.Y. Jan. 29, 2004). There was no condition that required maintenance that the National Park Service ignored or negligently addressed.

Really, there was no "maintenance" involved at all. It was not a failure of property maintenance that caused the change in vertical level between the ramp and the curb; it was the National Park Service's decision, made within its discretion, to install a parallel curb ramp instead of a curb ramp with side flares and to thus make the curb several inches higher than the sidewalk. See Complaint, Kaloudis v. United States (23-cv-8970) (E.D.N.Y. Dec. 6, 2023), ECF No. 1 at ¶ 80 (alleging that defendant was negligent in "installing a sloped sidewalk without making the adjoining curb . . . flush or level"). Having identified policy considerations implicated by this decision, which plaintiff has not rebutted, defendant is entitled to the application of the discretionary function exception.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
      March 26, 2025

11